Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Blanche Manning | Sitting Judge if Other than Assigned Judge | Sidney I. Schenkier |
|---|---|---|---|
| **CASE NUMBER** | 98 C 4247 | **DATE** | 3/28/2000 |
| **CASE TITLE** | Chgo Dist Council of Carps PenFd vs. R & R Flooring | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiffs' motion for leave to file first amended complaint [24-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | MAR 28 2000 date docketed | |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | 3/28/2000 | |
| SH | courtroom deputy's initials | 00 MAR 28 PM 3:47  Date/time received in central Clerk's Office | date mailed notice  SH  mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHICAGO DISTRICT COUNCIL OF ) <br> CARPENTERS PENSION FUND, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> R & R FLOORING, INC., ) <br> ) <br> Defendant. ) | No. 98 C 4247 <br><br> Judge Blanche Manning <br><br> Magistrate Judge Schenkier |

DOCKETED
MAR 2 9 2000

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on a motion by plaintiffs (collectively "the Trust Funds") pursuant to Federal Rule of Civil Procedure 15(a), for leave to file a First Amended Complaint [doc. #24-1]. Defendant R & R Flooring, Inc. ("R & R") opposes the motion on the sole ground that the proposed amendment would be futile. After careful consideration, the Court grants the Trust Funds' motion for leave to file their First Amended Complaint.

### I.

The Trust Funds bring this case under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, and the Taft Hartley Act, 29 U.S.C. § 185. As originally pled, the Trust Funds sought an order requiring R & R to permit an audit of its books and to pay all unpaid contributions (as well as interest, liquidated damages, attorneys' fees and costs) pursuant to an agreement dated May 6, 1997.

For more than one year, the Trust Funds have suspected that R & R is inextricably intertwined with Turano International, Inc. ("Turano"), a company that has accounted for all of R & R's income. That led to the Trust Funds issuing a subpoena seeking production by Turano of



a broad range of financial documents. Turano moved to quash, arguing among other things that the request would unduly burden Turano, a company alleged to be wholly separate from R & R. Of particular relevance was Turano's sworn statement, submitted in support of the motion to quash, that it shared no employees with R & R.

The Trust Funds claimed that the discovery was needed both to see if R & R (a union company) was attempting to avoid collective bargaining obligations by funneling work through non-union employment of Turano (which is not a signatory to the May 1997 agreement), to determine if Turano and R & R are alter-ego companies. In an order dated April 19, 1999, this Court granted the motion to quash in part, limiting the scope of the subpoena to focus on discovery within a relevant time frame that "may disclose a relationship, if any, between defendant and Turano" (Mem. Op. at 3).

The documents produced by Turano in response to the subpoena apparently did not disclose any significant evidence of an interrelationship between R & R and Turano. Discovery closed on August 19, 1999, and the Trust Funds entered into settlement discussions with R & R on the premise that R & R and Turano were separate. That all changed when, apparently by happenstance, the Trust Funds learned of an individual (Adam Dylag) who had shifted back and forth between working for R & R and Turano on a number of occasions, and in particular, had been paid both by R & R and Turano between June 8 and July 5, 1997.

Based on this evidence, which raised a question about Turano's sworn denial that it shared employees with R & R, the Trust Funds sought and -- on September 30, 1999 -- the Court permitted limited additional discovery: the production of payroll records by Turano and R & R, the deposition of Mr. Dylag, and a Rule 30(b)(6) deposition of R & R.

Despite production of payroll records that (according to the Trust Funds) has been incomplete, the additional discovery revealed evidence of other employees who were on both R & R's and Turano's payroll.[1] Moreover, in Mr. Dylag's deposition on January 11, 2000, he testified that Michael Guarino of R & R supervised him on certain work that he performed at a "Clock Tower" project while employed by Turano (Pls.' Mot., Ex. 3, at 9-11, 14).

The Trust Funds then filed the instant motion for leave to amend in which they reallege their original claim against R & R (Count I), and seek to add a count against R & R and a new defendant, Turano. The Trust Funds have alleged in this new proposed claim that R & R and Turano are either a "single employer" or are "alter egos," which in either event would subject Turano to liability under the May 6, 1997 agreement even though Turano is not a signatory to it.

## II.

Federal Rule of Civil Procedure 15(a) provides that where, as here, an answer to the complaint already has been filed, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." It is well settled that this mandate to freely permit amendments "is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Gregg Communications Sys., Inc. v. American Tel. & Tel. Co.*, 98 F.R.D. 715, 720 (N.D. Ill. 1983) ("This liberal policy of granting amendments is based in part on the belief that decisions on the merits should be made whenever possible, absent countervailing considerations."); 6 *Charles Alan Wright et al., Federal Practice & Procedure* § 1471, at 505-06

---

[1] R & R's contention that the Trust Funds never complained about incomplete production before (R & R's Resp. at 2 n.2) is incorrect. At a status hearing on December 22, 1999, R & R complained that the production had been incomplete. R & R is correct that the Trust Funds did not move to compel at that time, but the failure to do so is immaterial to the ruling on the present motion.

3

(2d ed. 1990). ("[T]he Rule's purpose is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities.").

Of course, justice does not require an amendment to be granted when it is clear that there are good and compelling reasons to decline to do so, such as those specifically identified by the Supreme Court in *Foman*: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Forman*, 371 U.S. at 182. However, in the absence of such reasons, "the leave sought should, as the Rules require, be 'freely given.'" *Id*. The decision as to whether leave to amend will be permitted is committed to the discretion of the district court. *See Id*.

R&R opposes the proposed amendment solely on the ground it is futile (R & R's Resp., at 3). A district court "is justified in denying an amendment if the proposed amendment could not withstand a motion to dismiss." *Glick v. Koenig*, 766 F.2d 265, 268 (7th Cir. 1985). However, a corollary to that proposition is that the Court should not deny an amendment as futile if it would withstand a motion to dismiss. *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997). As a result, the Court must be mindful that under the liberal rules of notice pleading, a complaint may not be dismissed unless it appears that a plaintiff can prove no set of facts in support of his or her claims that would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). All well-pleaded facts must be taken as true, all reasonable inferences must be drawn in favor of the plaintiff, and all ambiguities must be resolved in favor of the plaintiff. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1428 (7th Cir. 1996). Moreover, in defending against a motion to dismiss, a plaintiff may add "essential facts" missing from the complaint "if these facts are consistent with the allegations in the complaint." *Hentosh v.*

4

*Herman M. Finch University of Health Sciences*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999). Leave to amend should not be denied on this ground unless the proposed pleading is clearly futile. *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980).

R & R claims that the proposed amendment would be futile because the facts developed to date in discovery would make it impossible for plaintiffs to establish either that R & R and Turano constitute a single employer, or that there exists an alter-ego relationship between the two companies. For the reasons explained below, the Court disagrees.

### A.

The Seventh Circuit has held that in determining whether two nominally separate business entities are a single employer, a Court must examine the following factors: "(1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Trustees of the Pension, Welfare and Vacation Fringe Benefits Funds of IBEW Local 701 v. Favia Elec. Co., Inc.*, 995 F.2d 785, 788 (7th Cir. 1993). Significantly, the Seventh Circuit has also stated that "[n]o one of these factors is conclusive; instead, the decisionmaker must weigh the totality of the circumstances." *Id.*

The proposed first amended complaint alleges these elements (Pls.' Mot., Ex. 5, ¶ 19), but R & R asserts that plaintiffs will be unable to prove those allegations. In support of that assertion, R & R points to the evidence that Turano and R & R are separately incorporated; have separate office locations, directors, owners, telephone numbers, bank accounts, and employees; and are involved in different lines of business (Turano's business involves tile installation principally in residential locations, whereas R & R is involved in tile installation in commercial developments) (R & R's Resp., at 6). However, evidence has been developed during discovery that R & R has no recorded expenses for rent, materials, insurance, equipment, advertising, and salaries; that at least

until after the suit had been pending for more than a year, one hundred percent of R & R income had come from payments by Turano; that a particular individual (Michael Guarino) may have directed both R & R and Turano employees; and that at least six employees have worked for both Turano and R & R during the same time period, and at least one of them may have been on the R & R and Turano payrolls simultaneously. This latter point is of particular significance, because it appears contrary to the sworn statement by Turano one year ago flatly denying that Turano and R & R shared any employees.

Plaintiffs urge that the evidence that the Trust Funds have brought to bear all can be innocently explained, and cannot establish a single employer status between R & R and Turano. However, to take the path suggested by R & R would be to draw factual inferences in favor of R & R, which at this stage the Court cannot do. While the facts might be innocently explained, they also are susceptible of an interpretation that may support the claim in the Trust Funds' proposed amendment. The fact that R & R has no recorded expenses may not simply be "abnormal" bookkeeping (R & R's Resp., at 7), but may reflect that Turano foots the bill for R & R's expenses because in practice they are a single entity. Likewise, the fact that there are employees who have worked for both companies may not be an innocent coincidence that Turano knows nothing about, as R & R alleges. But, it may be that the sharing of employees, combined with the facts that Turano provides all or virtually all of R & R's income and that the same individual may have some role in directing employees for both companies, reflects common management and centralized control of labor relations. And, Turano's statement on oath that it did not "share" employees may, as R & R claims, be what Turano honestly thought (and may in fact be correct, if it is the case that the commonality was merely coincidental). But one also might infer that Turano attempted to conceal

the commonality of employees more than a year ago in order to avoid the claim now being made by the Trust Funds.

Now is not the time to decide which of these competing inferences should be drawn. Unlike the *Favia* case, which involved the review of the verdict after a bench trial, this case has not yet proceeded through complete discovery on the single-employer issue. At this stage, it cannot be said that the proposed amendment to add a single-employer theory is clearly futile.

### B.

The alter-ego doctrine is designed to "'prevent[] an Employer from gaining an unearned advantage in his labor activities simply by altering his corporate form.'" *NLRB v. Dane County Dairy*, 795 F.2d 1313, 1321 (7th Cir. 1986) (*quoting Alkire v. NLRB*, 716 F.2d 1014, 1018 (4th Cir. 1983)). While the doctrine is often used to ferret out the "'disguised continuance of a former business,'" *Favia*, 995 F.2d at 789 (*quoting International Union of Operating Eng'rs. v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir. 1987)), it also applies to situations in which the entity allegedly seeking to avoid its obligations exists side-by-side with its alleged alter ego. *See Central States, Southeast & Southwest Areas Pension Fund v. Sloan*, 902 F.2d 593, 597-98 (7th Cir. 1990).

In order to establish an alter-ego relationship, a plaintiff need not satisfy all of the elements of the single-employer doctrine. Rather, the Seventh Circuit has held that "'unlawful motive or intent are critical inquiries in an alter ego analysis.'" *Favia*, 995 F.2d at 789 (*quoting International Union of Operating Eng'rs. v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir. 1987)), (*quoting Centor*, 831 F.2d at 1312)) . And, as one would expect with an inquiry into intent, the alter-ego analysis is "heavily fact-laden." *Architectural Iron Workers Local No. 63 Welfare Fund v. United Contractors*, 46 F. Supp. 2d 769, 787 (N.D. Ill. 1999).

7

The proposed First Amended Complaint asserts an alter ego theory of liability (Pls.' Mot., Ex. 5, ¶ 20). While the Trust Funds do not specifically allege an unlawful intent, this pleading does notify R & R and Turano of the alter-ego theory and the basis for it, and is sufficient to pass muster under the generous notice pleading standards afforded under the Rules.

R & R cites *Architectural Iron Workers* in support of its claim that the Trust Funds cannot make out an alter-ego case on the ground that their theory makes no sense. In *Architectural Iron Workers*, plaintiffs alleged an alter-ego relationship between United Skys, Inc., a non-union contractor, and a wholly owned subsidiary created by Skys, United Contractors, Inc., which was a signatory to a collective bargaining agreement. *See Architectural Iron Workers*, 46 F. Supp. 2d at 774. In granting summary judgment for defendants on the alter-ego theory, the district court found that plaintiffs had failed to establish that Skys created or used contractors to avoid union obligations, and that it was illogical to claim that that was the purpose for creating Contractors, since Skys was not subject to a collective bargaining agreement in the first place. *See id.* at 788-90, 794. R & R attempts to analogize this case to *Architectural Iron Workers*, on the theory that Turano (like Skys) is not a union contractor and thus would have no reason to use R & R (which is subject to a collective bargaining agreement) to avoid collective bargaining obligations (R & R's Resp., at 10).

R & R is correct that *Architectural Iron Workers* suggests that the Trust Funds may have their work cut out for them in proving an alter-ego theory here. But the Court must consider that *Architectural Iron Workers* was a case decided on summary judgment, after completion of discovery. In this case, plaintiffs have had only limited discovery relating to the relationship between the companies. Additional discovery into the nature of the business relationship between the two entities -- such as, why substantially all R & R revenues come from Turano, how Turano decides to give business to R & R (given that Turano is principally involved in residential tile installation and

8

R & R in commercial installation), the full extent of employees being on both payrolls and the reason for it -- may, at the end of the day, reveal no unlawful motive. But the Court cannot speculate on what that discovery will show, much less deny the amendment on futility grounds based on the assumption that further evidence would doom plaintiffs' theory. The Court finds that this alter-ego theory is not clearly futile, and that the Trust Funds may amend the complaint to add it.

### III.

The Court's ruling today allows the plaintiffs to plead the single-employer and alter-ego theories against R & R and a new party, Turano. In allowing that amendment, in line with the liberal application required by Rule 15(a), the Court nonetheless cautions plaintiffs that what may be easy to plead may be far more difficult to prove. Discovery in this case on the original claim against R & R came to a close on August 19, 1999; the limited discovery that has occurred since that time, as well as additional discovery that the Court will permit in light of this amendment, pertains solely to the new alter-ego and single-employer claims. Plaintiffs thus should be mindful that, although ERISA authorizes the award of reasonable fees to prevailing plaintiffs, the fees attributable to pursuing the alter-ego and single-employer claims will not be recoverable if plaintiffs ultimately fail on those claims -- even if they prevail on the original claim against R & R.

For the foregoing reasons, plaintiffs' motion for leave to amend [doc. # 24-1] is granted. Plaintiffs are given leave to serve Turano with the First Amended Complaint, and are directed to inquire of R & R's counsel (who also represents Turano) whether counsel will accept service of the First Amended Complaint on behalf of Turano. If not, the Trust Funds shall take steps to serve Turano promptly. The parties are directed to meet and confer face-to-face by no later than April 17, 2000, to work out a proposed schedule that will allow the parties to conduct focused discovery on the limited issue of the single-employer and alter-ego theories newly asserted in the First Amended

Complaint, and for that discovery to be completed promptly. The parties shall present a joint proposal (or competing proposals, if they cannot agree) to the Court by the close of business on April 24, 2000, and the Court will set a discovery schedule at the status conference set for April 25, 2000, at 10:00 a.m.

       ENTER:

       _____
       SIDNEY I. SCHENKIER
       United States Magistrate Judge

**Dated: March 28, 2000**